UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

TITO J. LONG,

                Petitioner,

        v.                                     Case No. 07-C-1026

MICHAEL THURMER,

                Respondent.

DECISION AND ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS
AND DISMISSING CASE

Tito Long seeks a writ of habeas corpus under 28 U.S.C. § 2254. Long challenges his conviction of July 12, 2000, in Racine County Circuit Court. He argues that his constitutional rights were violated because of the admission of testimony by a surprise witness, the state's presentation of gang affiliated testimony, an improper jury instruction was given and counsel provided ineffective assistance.

BACKGROUND

On April 25, 1999, Julian Barkley was killed and three people were injured during a shooting inside a Racine bar. (*See* Answer Ex. D at 3.) Long was charged with the homicide and reckless endangerment.

At trial, Avery Thomas testified that during the afternoon of April 24, 1999, he and Long had been in a physical altercation. (Answer Ex. 52 at 116-17.) That night, Thomas saw Long in a Racine bar and hit Long in the face. (Answer Ex. 52 at 123-29, 165.) According to Thomas, Long responded with shots from a black handgun, hitting Thomas in the arm and finger. (Answer Ex. 52 at 128-30.) Barkley, a bystander in the bar,

was killed by a bullet. (*See* Answer Ex. 53 at 73-74, Ex. 56 at 67.) Jeremy Koker and Chris Mayfield were wounded. (Answer Ex. 52 at 61, Ex. 53 at 72, 54 at 17-18.)

During a pretrial motion hearing, the court ruled that testimony regarding gang affiliations could be received in evidence through Detective William Warmington, after the persons he was expected to identify had testified. (Answer Ex. 66 at 67-69, 89-90.) At trial, the prosecutor asked witnesses if they had gang affiliations or if they knew whether Long had such affiliations. (*See* Answer Ex. 54 at 141-43.) Witnesses identified two rival groups within the Gangster Disciples—the "Sixth Street" or "Sixth Ward" group and the "One Deuce" or "Twelfth Street Ward" group. (*See, e.g.,* Answer Ex. 52 at 77, Ex. 53 at 60.) The state elicited testimony from Koker that he, Long, and Thomas were members of Sixth Ward. (Ex. 52 at 80-82.) Witness Christopher Mayfield admitted that he was a member of the Twelfth Street Ward and said that Thomas, Koker, Shawnte Williams, and Long were members of Sixth Street. (Answer Ex. 53 at 61.) Shawnte Williams admitted he associated with Sixth Ward and identified Mayfield as likely being a member of One Deuce. (Answer Ex. 54 at 142.) Detective Warmington later testified that Long belonged to Sixth Ward and identified other witnesses' affiliations. (Answer Ex. 59 at 11, 104-05.) He also explained how gang affiliations are identified by clothing colors, tattoos, jewelry, hand signs, and police contacts. (Answer Ex. 59 at 12-15.)

Police had recovered three shell casings and a spent bullet from the bar. (Answer Ex. 56 at 81-85.) Another bullet was removed from Mayfield. (Answer Ex. 53 at 34-36.) A third bullet was removed from Barkley's body. (*See* Answer Ex. 57 at 19.) A ballistics witness testified that the three bullets with impact and penetration damage (i.e., damage to a bullet when it impacts a target) were 9mm caliber and fired from a Glock-like

weapon with six land and grooves and a right hand twist. (Answer Ex. 57 at 22, 28.) However, because of the damage to the bullets he was not able to say they were fired from the same firearm. (Answer Ex. 57 at 31.) The ballistics witness indicated that the three shell casings recovered from the bar were fired by the same firearm. (Answer Ex. 57 at 36.[1]) However, he could not match the casings to the spent bullets. (*Id.* at 45-46.)

The state's principal theory was that Long fired the gun that killed Barkley. (Answer Ex. 52 at 6-11, Ex. 61 at 67-69.) Long's counsel argued that although Long was in the bar and involved in an altercation with Thomas, he was not the shooter. (Answer Ex. 61 at 134.)

In addition to Thomas, two witnesses identified Long as the shooter or as holding a gun (*see, e.g.*, Answer Ex. 53 at 75-76), including Falandric Williams, who had not been named on the state's pretrial witness list. On the second day of trial, May 16, 2000, witness Mayfield identified "Prune" as being outside the bar before the shooting. (Answer Ex. 53 at 68.) When Mayfield resumed testifying the next day, he identified a photo of Falandric Williams as Prune. (Answer Ex. 54 at 16, 28-29.) On the fourth day of trial, the state moved to add Falandric Williams to its witness list. In its request, the prosecutor advised that she had gone to the jail the previous day to obtain a photo of Falandric Williams and discovered that he was in custody. (Answer Ex. 56 at 51-52.) He had been in jail since April 14, 2000. (Answer Ex. 56 at 54.) An investigator interviewed Williams mid-day on the fourth day of trial and defense counsel was given a report of that interview later that day. (Answer Ex. 56 at 51-55.) The prosecutor explained that Falandric

---

[1]He had also examined additional casings, not related to those in the bar, that were fired from two other guns. (*Id.*)

Williams was wanted on outstanding warrants and had been actively avoiding the police (Answer Ex. 56 at 53), and that Warmington had looked for Falandric Williams on and off before trial (Answer Ex. 59 at 34-35). Falandric Williams had also been in custody from June 26 to July 19, 1999 (Answer Ex. 57 at 7), but prosecutors had no mechanism for determining when a jail holds a potential witness in another matter (Answer Ex. 56 at 54). Defense counsel was given an opportunity to obtain additional information regarding Falandric Williams with the assistance of an investigator, was able to interview Williams that night. (Answer Ex. 57 at 3.)

The next morning, on the fifth day of trial, Long objected to Falandric Williams being called as a witness, citing state statutory and federal constitutional grounds. (Answer Ex. 57 at 3-6.) However, the trial court permitted Falandric Williams's testimony, finding good cause for the failure to list him as a witness earlier—the police had been unable to locate him despite serious effort. (Answer Ex. 57 at 10). In ruling, the court found that allowing Williams to testify did not result in any prejudice because Long's attorney had been able to meet with the witness and to have his investigator check on any matters raised by the interview. (Answer Ex. 57 at 11-12.)

Defense counsel asked that Falandric Williams's testimony be postponed until Monday or Tuesday the next week so he could look into matters his investigator found that morning and possibly interview Williams's probation officer. (Answer Ex. 57 at 126-28.) However, the court refused inasmuch as doing so would interfere with the state's order of witnesses. Nevertheless, the court indicated that, if Williams testified that day, defense counsel could recall him after speaking to his probation officer. (*Id.* at 128-29.) Falandric Williams testified that afternoon (Answer Ex. 58 at 30), saying that he saw Long

4

pointing a gun that looked like a Glock and that he observed Long's hand jerk back upon firing it. (Answer Ex. 58 at 34-38, 66-67).

Several witnesses did not see anyone with a gun in the bar. For instance, Shawnte Williams testified that he heard approximately seven shots fired inside the bar and seven more outside the bar but he did not see anyone with a gun inside the bar. (Answer Ex. 54 at 156-57.) Additional testimony indicated that other persons may have had weapons. For instance, Falandric Williams testified that Koker had a gun that night but Williams did not see it fired. (58:38-39.) Donnie Gardner said that after the shots were fired he saw a gun on the floor of the bar near Mayfield. (Answer Ex. 56 at 39-42, 44-45.)

There was other testimony indicating the area where shots were fired, however it lacked specificity. For instance, Donnie Gardner testified that the first shot was from the area at the back of the bar and that it came from around Long or someone to the side of him. (Answer. Ex. 56 at 25, 42.) Shaakira Abdullah testified that he saw Thomas approach Long in a confrontational manner and then sparks flew from Thomas's direction. (Answer Ex. 56 at 62-63, 65-66, 75.)

The state requested and the court gave a party-to-a-crime instruction with options of finding Long guilty as the direct actor or as an aider-and-abettor. (Answer Ex. 60 at 61.) The jury found Long guilty of one count of first-degree intentional homicide, party-to-a-crime, while using a dangerous weapon; nine counts of first-degree recklessly endangering safety, party-to-a-crime, while using a dangerous weapon; and one count of second-degree recklessly endangering safety, party-to-a-crime, while using a dangerous

weapon. (Answer Ex. A at 1, D at 2.) Long was sentenced to life plus five years in prison for the homicide, with a parole eligibility date of July 3, 2022.[2] (Answer Ex. A.)

On direct appeal, Long raised three arguments contending that the trial court erred by: (1) allowing the admission of gang affiliation evidence that lacked any probative value and was prejudicial; (2) allowing the testimony of last-minute, surprise-witness Williams; and (3) refusing to give the jury a *falsus in uno* instruction, i.e., an instruction that the jury could disregard the testimony of witnesses it found willfully testified falsely. (Answer Ex. B.) The Wisconsin Court of Appeals affirmed the conviction on April 24, 2002. (Answer Ex. D.) Review of the conviction was denied by the Supreme Court of Wisconsin on September 26, 2002. (Answer Ex. G.)

Following the state supreme court's denial, Long, on October 3, 2003, filed a pro se petition with the Wisconsin Court of Appeals seeking a writ of habeas corpus under *State v. Knight*, 168 Wis. 2d 509 (1992). (Answer Ex. H-1.) Long reargued his claim regarding the trial court's admission of Falandric Williams's testimony and added that appellate counsel was ineffective by failing to assert that the recess given to prepare for Williams's testimony was insufficient. (Answer Ex. H-1 at (I), 7-28.) He submitted that the trial court and court of appeals erred regarding the *falsus in uno* instruction. (Answer Ex. H-1 at (I), 34-42.) Also, Long contended that the state violated the trial court's ruling on how Warmington's testimony on gang affiliation would be presented. (Answer Ex. H-1 at (I), 42-45.) He further argued that appellate counsel was ineffective by (1) not addressing the state's violation of a state statute regarding its duty to disclose the names of its

_____

[2]He received several concurrent terms of six years and one concurrent sentence of three years for the reckless endangerment counts. (Answer Ex. A.)

6

witnesses, (2) insufficiently briefing regarding the *falsus in uno* instruction, (3) failing to discuss "the obvious error of the trial court allowing 5 unqualified witnesses to offer expert opinions on gangs," (4) failing to file a reply brief on appeal or notify Long about it, and (5) dropping two issues in Long's petition for review with the Supreme Court of Wisconsin, which could bar federal review. (Answer Ex. H-1 at 47.) The Wisconsin Court of Appeals denied the *Knight* petition on June 26, 2006, respecting arguments (1) through (4), finding that Long did not demonstrate that he was prejudiced by any of appellate counsel's omissions to argument (5), the Wisconsin Court of Appeals concluded it had no authority to evaluate counsel's performance before the Supreme Court of Wisconsin. (Answer Ex. K at 1-8.) The Supreme Court of Wisconsin denied review on August 30, 2006. (Answer Ex. N.)

Meanwhile, Long filed a motion under Wis. Stat. § 974.06 with the Racine County Circuit Court; however the motion was denied on March 6, 2006. (Answer Ex. O app. 101.) Long appealed, arguing that the trial court's party-to-a-crime instruction violated his right to due process and that postconviction counsel was ineffective for failing to file a motion claiming instruction error. (Answer Ex. O.) The appeal was denied by the Wisconsin Court of Appeals on June 13, 2007; the Supreme Court of Wisconsin again denied review. (Answer Exs. R, U.)

STANDARD OF REVIEW

A district court "shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus is not available to remedy errors of state law. *Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002).

7

A writ of habeas corpus cannot be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that (1) was contrary to clearly established federal law as determined by the U.S. Supreme Court; (2) involved an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court; or (3) was based on an unreasonable fact determination in light of the evidence presented at the state court proceedings. § 2254(d)(1), (2). A state court decision is contrary to Supreme Court law if the state court arrived at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decided the case differently than the Supreme Court on facts that are materially indistinguishable. *Williams v. Taylor*, 529 U.S. 362, 405-06, 413 (2000). A state court decision is an unreasonable application of Supreme Court law if the state court identified the correct governing legal principle but unreasonably applied that principle to the facts of the case. *Id.* at 407-09, 413. A federal court analyzing the unreasonable-application prong asks whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 409.

When the state courts have not addressed the merits of a claim, this court reviews with deference to the state court but ultimately de novo. *Kerr v. Thurmer*, 639 F.3d 315, 326 (7th Cir.), *petition for cert. filed*, 80 U.S.L.W. 3004 (2011). In either case (with or without a merits determination), this court presumes the factual determinations made by the state court are correct; "the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence." § 2254(e)(1).

"The relevant state court decision is that of the last state court to review the issue." *Lucas v. Montgomery*, 583 F.3d 1028, 1030 (7th Cir. 2009). Later unexplained

8

orders upholding that judgment or rejecting the same claim rest upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Kerr*, 639 F.3d at 324. When a federal claim has been presented to a state court and the state court has denied relief, it is presumed that the state court adjudicated the claim on the merits in the absence of any indication to the contrary. *Kerr*, 639 F.3d at 323.

Notably, a claim of ineffective or incompetent counsel during a state collateral postconviction proceeding is not grounds for relief under § 2254. § 2254(I). However, there are two types of postconviction proceedings in Wisconsin. Postconviction proceedings that occur between judgment and direct appeal (such as motions under Wis. Stat. § 974.02) are not collateral; they are part of direct review. *See Morales v. Boatwright*, 580 F.3d 653, 656 (7th Cir. 2009). Motions filed after direct appeal under Wis. Stat. § 974.06 are collateral proceedings similar to a petition for habeas corpus. *Id.*

DISCUSSION

Long asserts four grounds for relief, one having subparts: (1) the trial court improperly allowed late-identified witness Falandric Williams to testify; (2) the state presented gang affiliation evidence in violation of an evidentiary ruling; (3) a party-to-a-crime instruction violated his right to due process; and (4)(a) postconviction counsel was ineffective for failing to preserve an issue regarding the party-to-a-crime instruction, and (b) appellate counsel was ineffective for inadequately briefing the issues preserved for appeal. Thurmer responds to these arguments on the merits, and submits that Long procedurally defaulted several claims because he did not raise them in the state courts.

A petitioner must give the state courts "a meaningful opportunity to pass upon the substance of the claims" the petitioner later brings in federal court. *Spreitzer v.*

9

*Schomig*, 219 F.3d 639, 645 (7th Cir. 2000). He must present the operative facts and the legal principles to the state judiciary. *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001). Procedural default may occur: (1) when a petition to the federal court includes new claims that the petitioner failed to raise at the state level, *Bowles v. Berge*, 999 F. Supp. 1247, 1252 (E.D. Wis. 1998); *see Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988); or (2) where the state court declined to address a federal claim because the petitioner failed to comply with a state procedural requirement, *Bowles*, 999 F. Supp. at 1252; *see Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991). When a habeas petitioner has procedurally defaulted his federal claims in state court, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Cause for default is established by showing an external impediment that prevented the petitioner from presenting his federal claims in state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Ineffective assistance of counsel is an example of an external impediment, *Smith v. Battaglia*, 415 F.3d 649, 653 (7th Cir. 2005), so long as the ineffective counsel claim was presented in the state courts as an independent claim before being used to establish cause, *Murrary v. Carrier*, 477 U.S. 478, 489 (1986). Prejudice is established by showing that the violation of petitioner's rights "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Promotor v. Pollard*, 628 F.3d 878, 887 (7th Cir. 2010) (internal quotation marks omitted), *cert. denied*, 131 S. Ct. 2937 (2011).

A.    Admission of Falandric Williams's Testimony

Last-minute witness Falandric Williams testified that he saw Long shoot a weapon.  The other two witnesses who testified that Long held or shot a gun were Thomas, instigator of the barroom altercation, and one of his friends or cohorts.  As a possibly neutral observer of the Long/Thomas dispute, Falandric Williams may have been a more persuasive witness, and, therefore, Long challenged the admission of his testimony.  On appeal, defense counsel characterized Williams's testimony as "devastating.  He clearly placed a black Glock in Long's hand at the time of the shooting."  (Answer Ex. B at 34.)

Generally, the admissibility of evidence is a matter of state law.  *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994).  However, a writ of habeas corpus may issue when the ruling violated the defendant's due process rights by denying him a fundamentally fair trial.  *Id.* at 702.  The proper standard for a federal court to review a state court determination is whether the ruling "so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten,* 414 U.S. 141, 147 (1973).

Thurmer does not contend that Long's due process respecting the testimony of Falandric Williams was procedurally defaulted.[3]  The Wisconsin Court of Appeals held that "because the defense was afforded the opportunity to interview the eyewitness before he testified, Long's due process right to fundamental fairness in the trial process was not compromised."  (Answer Ex. D ¶ 2.)  Thurmer continues quoting the Wisconsin Court of Appeals which added:

_____

[3]On direct appeal, Long raised state law arguments; he made no argument on constitutional grounds.  (*See id.* at 36-38.)  Nevertheless, the Wisconsin Court of Appeals held not only that good cause existed but that Long's due process right was not violated.  (Answer Ex. D at 2.)  Long's petition for review before the Supreme Court of Wisconsin addressed solely state-law grounds for relief under state law cases.  (*See, e.g.*, Answer Ex. E.)

> Having concluded that good cause existed for the late revelation of Williams as a witness, we do not see that this resulted in trial by ambush. The trial court properly granted a recess to allow Long to interview Williams. Long makes no complaint that this opportunity was insufficient to prepare an adequate cross-examination of Williams or to pursue an investigation of the information he provided.

(Answer Ex. D ¶ 38 (citation omitted).)

In his *Knight* petition, Long contended that he was deprived of his federal right to due process and a fair trial. (Answer Ex. H-1 at 1.) He then argued that appellate counsel was ineffective in presenting his federal due process claim about Falandric Williams's testimony. (Answer Ex. H-1 at 6.) Long further asserted that appellate counsel should have argued that the short recess that he was given to prepare for Williams's testimony was insufficient to thoroughly investigate and prepare an effective cross-examination. (*Id.* at 29-30.) Long concluded by charging that the state's failure to disclose Williams as a witness promptly or show a due diligent effort to locate him prior to trial "retarded Long's constitutional and state rights to a fair trial." (*Id.* at 34.)

The Wisconsin Court of Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984), to the ineffective assistance of counsel claim and found that Long had failed to demonstrate prejudice for purposes of the *Strickland* test. (Answer Ex. K at 2.) It did not address the due process argument of the underlying claim directly, but noted that neither Long nor the record suggested what else trial counsel would have done with extra time. (*Id.* at 4.) Thus, appellate counsel's failure to argue that trial counsel was hindered did not prejudice Long on appeal. (*Id.* at 5.) The Wisconsin Court of Appeals did not reference applicable Supreme Court law on the due process standard regarding a late-announced witness. (*Id.* at 8.)

Regardless of whether these Wisconsin Court of Appeals decisions merit deferential review in accordance with § 2254(d), Long would not succeed even if a de novo standard were applied. First, he fails to argue constitutional law except for conclusory remarks. Instead, he again focuses on whether there was good cause for the prosecutor's failure to list Williams as a witness and whether the prosecutor exercised due diligence in searching for Williams. (Pet'r's Br. at 9-11 (stating, e.g., "that the facts are diametrically opposed to a finding that good cause existed for failing to list Williams as a witness prior to trial" and that "the state did not use due diligence in seeking Williams").) Good cause and due diligence were considerations under state law, but do not determine federal due process law. That a trial court improperly applies a state's discovery rules does not amount to a due process violation. *See Mauricio v. Duckworth*, 840 F.2d 454, 458 n.6 (7th Cir. 1988).

Second, Long fails to persuade this court that the addition of Williams to the witness list violated his due process rights. According to the Supreme Court, a defendant's

> right to notice of the charges against which he must defend is well established. But a defendant's claim that he has a right to notice of the *evidence* that the state plans to use to prove the charges stands on quite a different footing. We have said that 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded.'

*Gray v. Netherland*, 518 U.S. 152, 167-68 (1996) (citations omitted). "There is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). *Brady v. Maryland*, 373 U.S. 83 (1963), addressed exculpatory evidence only and did not create a general constitutional right to discovery. *Gray*, 518 U.S. at 168; *Weatherford*, 429 U.S. at 559. Moreover, exclusion is not the sole remedy for violation of

13

a right to notice of a witness. *Gray*, 518 U.S. at 169. Prejudice can be minimized by granting a continuance. *Id.*

Long was given a day (though not as long as he desired) and an opportunity to interview Williams before Williams testified; he was permitted a chance to contact Williams's probation officer and to recall Williams if desired. Moreover, Long cites no evidence in the record indicating that the recess granted by the court was insufficient, that counsel was unprepared to cross-examine Williams, or how his counsel would have proceeded differently if he had had a longer recess. These measures provided him with fair notice and due process. Further, he does not persuade the court that exclusion was the appropriate remedy.

B.    Admission of Testimony Regarding Gang Membership

During trial, various fact witnesses were questioned and provided answers regarding gang affiliation. Detective William Warmington, the primary investigator in the case, identified characteristics of gang members and claimed that various witnesses, including Koker and Shawnte Williams, were members of Sixth Ward. (Answer Ex. 59 at 11.) In addition, Detective Warmington testified that he believed Long was a member of Sixth Ward. (Answer 59 at 104-05.)

Generally, as discussed above, admissibility of evidence is a matter of state law although a writ of habeas corpus may issue when the ruling violated the defendant's due process rights by denying him a fundamentally fair trial. *Milone*, 22 F.3d at 702.

Thurmer has contended this ground was procedurally defaulted and this court agrees. On direct appeal before the Wisconsin Court of Appeals Long argued that the trial court abused its discretion by admitting testimony regarding gang affiliation because under

14

Wis. Stat. § 904.04 such testimony was inadmissible character and "other acts" evidence and under Wis. Stat. § 904.03 its probative value was substantially outweighed by the danger of unfair prejudice. Moreover, Long submitted that Warmington's expert gang testimony was inadmissible under Wis. Stat. § 904.02 for lack of relevance and expertise. (Answer Ex. B at 23-32.) Although a section of Long's brief asserted that admission of the evidence was so prejudicial that it was impossible for Long to receive a fair trial (*id.* at 23), Long cited no federal cases and failed to present a due process argument. All of his arguments relied on state statutes and cases. Further, Long's counsel dropped the issue from his petition for review by the Supreme Court of Wisconsin. (Answer Ex. E.) Also, Long did not raise an argument concerning gangs in his § 974.06 motion, which was confined to the party-to-a-crime instruction.

In his *Knight* petition, Long argued that appellate counsel failed to raise the issue of whether the state violated a trial court ruling on *how* gang-related evidence would be admitted—specifically through Warmington alone and solely to show bias. (Answer Ex. H-1 at 42-43.) Long added, in the midst of his arguing that the state's introduction of evidence through others "violated [his] statutory and constitutional rights, which were prejudicial to his right to a fair and impartial trial." (*Id.* at 44.) However, Long's arguments and references focused only on state law, as he continued with a discussion of how the evidence violated Wis. Stat. § 907.02. (*Id.* at 44-46.) He asserted that witnesses other than Warmington who relayed information on gang affiliation had to be, but were not, qualified as experts, violating Wis. Stat. § 907.02. (*Id.* at 46.)

Any federal constitutional issue respecting the admission of gang affiliation evidence was procedurally defaulted because it was presented neither to the Wisconsin

Court of Appeals or Supreme Court of Wisconsin on direct appeal or in Long's § 974.06 motion. Furthermore, Long's mention of a possible constitutional issue in one sentence of his *Knight* petition asserting ineffective assistance of appellate counsel was not a fair presentation of the claim to the state courts.

Additionally, Long has not established prejudice and was not denied a fair trial. After the pretrial motion hearing, Long was on notice that Detective Warmington was going to testify regarding gang affiliation; Long had time to prepare for Warmintong's testimony. As for the content of the gang affiliation testimony of Warmington and others, such testimony did not establish any gang-related animus between Long and Thomas, as they were both Sixth Ward associates. In his brief to the Wisconsin Court of Appeals on direct appeal Long contended that gang affiliation testimony was prejudicial because of how news media sources sensationalize such groups. In his *Knight* petition Long asserted that gang evidence raised "negative inferences associated with that lifestyle, and the notion that Long must be guilty because he affiliates with gang members." (Answer Ex. H-1 at 46.) But prejudice, if any, relating to gang membership ran to the prosecution witnesses as well as to Long. The testimony suggested gang affiliations for many of the witnesses who were in the bar.

Long has not persuaded this court that the admission of the gang affiliation evidence infected the entire trial or draws into question the trial's outcome. Thus, he suffers no prejudice by being unable to present this argument fully.

C.      The Party-to-a-Crime Instruction

Long was charged as the principal in the shooting. However, at the instructions conference, the prosecutor asked for a party-to-a-crime instruction with options

16

of finding Long guilty as a direct actor or as an aider-and-abettor. (Answer Ex. 60 at 61.) The trial court gave the requested instruction.

Thurmer contends that Long procedurally defaulted this claim because he never raised a due process argument regarding the instruction. This court disagrees. Long raised his challenge to the party-to-a-crime instruction in his § 974.06 appeal. In his appeal brief following denial of that motion, he contended that the due process clause requires that each element of a crime be met to sustain a criminal conviction. (Answer Ex. O at (I), 11-12.) Long maintained that the state failed to meet all elements of a party-to-a-crime charge because it presented no evidence that he was aided and abetted by another or that he aided and abetted another. (*Id.*) "In failing to meet these elements, the State has effectively deprived Long of his Fourteenth Amendment guarantee to due process." (*Id.* at 12.)

Rather than rejecting this issue as barred by *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 181 (1994), which it could have, the Wisconsin Court of Appeals addressed the claim on the merits. Thus, the claim was not procedurally defaulted.

Nevertheless, the claim fails. For a due process violation in a habeas case, there must be a reasonable likelihood the jury applied an instruction in a way that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380 (1990). A state has the power, within constitutional bounds, to define its crimes as it wishes. *Hughes v. Mathews*, 576 F.2d 1250, 1255 (7th Cir. 1978). The Seventh Circuit has found "no constitutional infringement in Wisconsin's decision to make participation in a crime a criminal act." *Lampkins v. Gagnon*, 710 F.2d 374, 377 (7th Cir. 1983). In Wisconsin, if proper facts are

brought out at trial, a party-to-a-crime instruction is appropriate even if the defendant is charged as the principal. *Harrison v. State*, 78 Wis. 2d 189, 208, 254 N.W.2d 220 (1977).

Long cannot show that the state failed to meet the elements for party-to-a-crime liability. Although he was charged as the principal in the shooting, the state provided evidence that more than one person had a gun at the bar where the shooting occurred. Falandric Williams testified that Koker had a gun. (Answer Ex. 58 at 38-39.) Witness Donnie Gardner said he heard shots coming from the back of the bar and that either Long or someone next to Long fired shots. (Answer Ex. 56 at 24-25.) And ballistics evidence did not confirm that the three spent bullets were fired from the same gun.

Long disputes this evidence, saying that the evidence showed the use of solely one weapon. However, notwithstanding the testimony of the ballistics expert to that effect, the testimony described above supports the court's decision to give the party-to-a-crime instruction. The Wisconsin Court of Appeals found that under Wisconsin law the instruction was properly given. (Answer Ex. R at 2-3.) The instruction was reasonable in light of the evidence in the record and does not violate federal law, as the state is allowed to define its crimes. Even under a de novo standard Long fails to persuade the court that the jury applied the instruction in violation of federal law.

D.    Ineffective Assistance of Counsel

Long asserts his ineffective assistance of counsel claim in two parts. First, he asserts that postconviction counsel was ineffective for failing to preserve the party-to-a-crime instruction issue. Second, Long submits that appellate counsel was ineffective for inadequately briefing the issues preserved for appeal.

To succeed on an ineffective assistance of counsel claim, Long must establish that (1) counsel's conduct fell below an objective standard of reasonableness and (2) he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). For the performance prong of the *Strickland* test, a prisoner must establish that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. *Strickland* permits a wide latitude of permissible attorney conduct. *See id.* at 689. Judicial scrutiny is "highly deferential" and the court strongly presumes that counsel's conduct was reasonable. *Id.* Counsel's performance must be evaluated from his or her perspective at the time; hindsight should not distort the evaluation. *Id.* To establish prejudice, Long "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Under the deferential habeas standard of review, this court's responsibility is not to decide itself whether *Strickland*'s standards were met but rather "to decide whether the state courts were unreasonable when *they* concluded that [Long's] ineffective assistance claim could not prevail." *Kerr*, 639 F.3d at 319.

    a.    Postconviction counsel

As indicated by Long's pro se brief on his § 974.06 motion, the postconviction counsel he references is not counsel in collateral proceedings in state court but is the attorney responsible for post-trial motions such as those under Wis. Stat. § 974.02 that are filed between conviction and direct appeal. (*See* Answer Ex. O at 14-17.) Such counsel

19

is subject to ineffective assistance of counsel claims. Long argues that postconviction counsel did not "file a motion in the trial court alleging that trial counsel was ineffective for failing to challenge the submission of the party to a crime jury instruction." (Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus at 16.)

However, postconviction counsel was not deficient in Long's case because trial counsel was not deficient regarding the party-to-a-crime instruction. As stated earlier, the Wisconsin Court of Appeals found that under Wisconsin law the instruction was given properly and this court has determined that delivering the instruction did not result in a due process violation. Long loses the claim of ineffective assistance of counsel predicated upon the same point.

     b.   Appellate counsel

Regarding appellate counsel, Long fails to meet either prong of *Strickland*. Counsel's conduct was reasonable. She filed an appellate brief addressing two of the claims Long raises in this case, though under state rather than federal law, as well as a jury instruction claim. However, counsel is not required to raise every nonfrivolous defense. *Kerr*, 639 F.3d at 319. Choosing the arguments to raise on appeal from a wider range of available arguments is acceptable. Here, Long has alleged two of the same trial errors (the presentation of gang affiliation testimony and Falandric Williams testimony), so he cannot claim that appellate counsel missed those errors. That counsel argued state law rather than federal law does not establish inadequacy. The state-law arguments appear stronger than the federal arguments. Further, counsel did not provide the Wisconsin Court of Appeals with a bare-bones brief that failed to address these issues. Instead, counsel

presented forty pages of detailed argument on three issues. (Answer Ex. B.) As a consequence, this court sees no basis for finding a deficiency.

Regarding prejudice, Long suffered none. As discussed above, the federal law claims regarding Falandric Williams and the party-to-a-crime instruction fail, and the gang affiliation testimony was not unfairly prejudicial. Long was able to raise the instruction claim in his § 974.06 motion, so he was not harmed by that omission.

Thus, Long's ineffective assistance of appellate counsel claim fails whether considered under a de novo or deferential standard.

## CERTIFICATE OF APPEALABILITY

An unsuccessful habeas petitioner has no right to appeal the denial of his petition. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 335 (2003). Before a habeas petitioner may take an appeal to the Seventh Circuit, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Miller-El*, 537 U.S. at 335-36. The certificate of appealability issues only if the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies the standard for a "substantial showing" by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating the standard as whether "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983))).

21

The certificate of appealability determination is not a second assessment of the merits. *See Miller-El*, 537 U.S. at 327, 336. Instead, it is a threshold inquiry into the debatability of the district court's decision. *Id.* at 336. The petitioner need not demonstrate that the appeal will succeed. *Id.* at 337. A claim may be debatable even though every jurist, after full consideration of the merits of the case, would decide against the petitioner. *Id.* at 338; *see also Davis v. Borgen*, 349 F.3d 1027, 1028 (7th Cir. 2003). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342.

If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Davis*, 349 F.3d at 1028, 1029. If the court denies the request for a certificate of appealability, it must state its reasons. Fed. R. App. P. 22(b)(1).

Where a district court has rejected a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. When a district court dismisses a habeas petition based on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Section 2253 mandates that both showings be made before a certificate of appealability is granted. *Id.* at 485.

This court finds the issue regarding Falandric Williams's testimony to be debatable among reasonable jurists. Respondent has not challenged that claim as procedurally barred, it is arguable whether Long raised federal-law arguments, and it is arguable whether a twenty-four hour continuance was enough to overcome any harm related to the late identification of the witness. Similarly, the court finds the ineffective assistance of appellate counsel claim to be debatable, as reasonable jurists could differ as to what arguments counsel should have made on direct appeal and the effect of any exclusion of those arguments on the proceedings.

However, the other claims do not merit proceeding further. Reasonable jurists would not differ as to the default of the gang affiliation testimony issue and Long's failure to overcome the default. Similarly, reasonable jurists would not debate that the state can define its party-to-a-crime liability as it wishes and that sufficient evidence existed in the record for giving of the party-to-a-crime instruction such that no due process violation occurred. Finally, reasonable jurists would not debate the failure of the ineffective assistance of counsel claim as to postconviction counsel, as that claim fails along with the party-to-a-crime instruction claim.

CONCLUSION

For the reasons stated above, Long fails to establish entitlement to a writ of habeas corpus. Accordingly,

IT IS ORDERED that a petition for writ of habeas corpus is denied and that this case is dismissed.

IT IS FURTHER ORDERED that a certificate of appealability issue on the claims regarding Falandric Williams's testimony and ineffective assistance of appellate counsel.  A certificate of appealability is denied as to the other claims.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2011.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE